1   Erin Ronstadt, SBN 028362
    Jeremy Pekas, SBN 025678
2   Kristin Cox, SBN 030240
    CALDWELL & OBER, P.L.L.C.
3   1940 E. Camelback Road, Suite 150
    (602) 277-1745
4   (602) 761-4443 Fax
    erin@caldwellober.com
5   Jeremy@caldwellober.com
    kristin@caldwellober.com
6
    Attorneys for Plaintiff
7

8                    IN THE UNITED STATES DISTRICT COURT

9                       FOR THE DISTRICT OF ARIZONA

10  Betty Jensen, a single woman,              No.

11                              Plaintiff,

12  v.                                         COMPLAINT

13  USAA Comprehensive Welfare Benefits
    Plan, Number 519, an ERISA benefits plan;
14  Liberty Life Assurance Company of
    Boston, a plan fiduciary; USAA's
15  Executive Vice President, People Services,
    a plan administrator; and United Services
16  Automobile Association, a plan sponsor,

17                             Defendants.

18       For her claims against Defendants USAA Comprehensive Welfare Benefits Plan,

19  Number 519 (the "Plan"), Liberty Life Assurance Company of Boston ("Liberty"),

20  USAA's Executive Vice President of People Services ("Plan Administrator"), and United

21  Services Automobile Association ("USAA") (collectively "Defendants"), Plaintiff Betty

22  Jensen ("Jensen") alleges as follows:

23                       **JURISDICTION AND VENUE**

24       1.       This action arises under the Employee Retirement Income Security Act of

25  1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

26

27

28

*(left margin)* CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

-1-

2.      This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

3.      Venue is proper in this Court under ERISA, 29 § 1132(e)(1) and 28 U.S.C. § 1391(b).

4.      Jensen is and was at all relevant times a resident of Maricopa County, Arizona.

5.      USAA, the Plan, and the Plan Administrator have their principal place of business in the State of Texas.

6.      Liberty has its principal place of business in the State of Massachusetts.

7.      Defendants are licensed and authorized to do business in Maricopa County, Arizona, and/or reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

8.      Jensen satisfied all of the jurisdictional prerequisites to filing this lawsuit, and her claims are timely before this Court.

**PARTIES**

9.      All previous paragraphs are incorporated by reference.

10.     The Plan is a purported ERISA benefit plan established and maintained by USAA for coordinating and administering welfare benefits for its eligible employees.

11.     The Plan is a welfare benefit plan that offers group short-term disability ("STD") benefits and long-term disability ("LTD") benefits. The Plan is comprised of "Constituent Benefits Programs." As two of these Constituent Benefits Programs, USAA established and maintains the USAA Short-Term Disability Benefit Plan (the "STD Program") and USAA Employee Benefit Association Group Long-Term Disability Plan (the "LTD Program") to help ease the financial impact a long-term illness or injury can have on an employee's life.

12. For disabilities that occur after December 31, 1996, USAA provides benefits under the LTD Program according to an insurance policy issued and fully insured by Liberty, identified as Policy No. GF3-891-419734-01 (the "Policy").

13. The STD Program is self insured by USAA's general assets, and STD claims are administered by Liberty.

14. USAA administered the Plan in Arizona to its employees, including Jensen.

15. USAA is the Plan Sponsor and Employer.

16. The Plan Administrator is the "administrator" and the "named fiduciary" with respect to the general administration of the Plan.

17. The Plan Administrator may appoint other Plan Administrators. In the absence of an appointment, the Executive Vice President of People Services, or Human Resources, shall be the Plan Administrator.

18. The Plan Administrator has the power to delegate authority, to appoint Third Party Administrators ("TPAs"), and to grant or deny benefits under the Plan and Constituent Benefits Programs.

19. On information and belief, Liberty administered claims for USAA under the Plan as a TPA or as the Plan Administrator.

20. Jensen was an Eligible Employee, Participant, and beneficiary entitled to LTD benefits under the Plan.

21. USAA or the Plan Administrator exercised and reserved authority to make final decisions regarding the administration and payment of disability benefits for the Plan. Liberty acted as USAA's agent to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan. Accordingly, Jensen is informed and believes that USAA and Liberty are either a "named fiduciary" of the Plan, pursuant to 29 USC § 1133(2); or a "deemed fiduciary" pursuant to 29 USC § 1002 (21)(A); or a "designated fiduciary" pursuant to 29 USC § 1105(c)(1)(B).

22.     Liberty had actual or apparent authority to act as a fiduciary on behalf of the Plan.

23.     Liberty's third-party vendors had actual or apparent authority to act as fiduciaries on behalf of the Plan and administered the Plan in providing services to Defendants.

24.     On information and belief, USAA has not properly conferred Liberty with the discretionary authority to interpret the Plan or to make eligibility determinations regarding the Plan.

25.     Liberty acted under a structural conflict of interest in both administering and paying claims under the Plan.

26.     Jensen is entitled to *de novo* review of her claims.

## GENERAL ALLEGATIONS

27.     All previous paragraphs are incorporated by reference.

28.     USAA provided certain USAA employees with STD and LTD insurance pursuant to the Plan and other documents comprising the Plan.

29.     Jensen was an employee of USAA as of 2003 and remained a covered individual under the Plan eligible for LTD benefits.

30.     Jensen received annual performance reviews from USAA, including but not limited to years 2003-2012.

31.     USAA developed various incentivized programs for its employees as a way to acknowledge them for their work performance.  One example of this is the PRIDE Tribute, which acknowledged employees who stood out and exhibited exemplary work ethics.  The PRIDE Tribute consisted of the following elements, or "PRIDE Principles": 1) exceed customer expectations; 2) listen and communicate; 3) work as a team; 4) pursue excellence; 5) share knowledge; 6) be a leader; 7) keep it simple; 8) participate and contribute; 9) live the golden rule; and 10) have fun.

-4-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

32.     For each year of her employment with USAA, Jensen received numerous awards and recognitions for her exceptional work performance.

33.     In 2003, Jensen was nominated by Jessica Unruh for the annual Pride Champion award. The nomination included examples of how Jensen demonstrated great work ethic.  She was recognized for taking "pride" in her work, always having a positive attitude, her reliability, and her willingness to help wherever it was needed.

34.     In 2003, Jensen received six other PRIDE Tribute acknowledgments from five different employees.

35.     Ten other employees acknowledged Jensen in several emails from February 2003 to October 2003, expressing their appreciation for her hard work.  For example, on April 16, 2003, Karen Ludwick stated, "Thank you!!  As usual, you are extremely efficient!!!"  On February 25, 2003, Vickie Rohlfs stated, "Betty is to be applauded on the good job she did in preparing the minutes – especially as a new comer to the company and the committee.  Thanks, Betty!" On October 31, 2003, Melanie Peterson said, "Thank you for always being positive and supportive.  You are truly a joy to work with."  On May 13, 2003, Alma Garza stated, "You are so wonderful in staying on top of this.  I don't know what we would do if you weren't here for us.  Thanks a million!"

36.     In Jensen's 2003 year-end Performance Evaluation, she received an overall rating of "Far Exceeded Expectations" for her excellent service, teamwork, dependability, and innovative skills.

37.     In 2004, Jensen's responsibilities significantly increased in light of USAA's move to a new campus and an increase in personnel.  She excelled in her job duties without any additional clerical assistance.

38.     Jensen received a Blue Ribbon Nomination in 2004 for going above and beyond the call of duty during the move and was recognized for taking time out of her weekend to decorate the new office to build excitement for the representatives.  In

addition, Jensen was nominated for the Phoenix Office Excellence Award.  Jensen also received 26 acknowledgments and commendations from many employees for exceeding customer expectations, her teamwork, her positivity, her listening and communication skills, and her participation and contribution to the company.  Jensen continued to receive positive feedback from 10 more employees through various e-mail messages. People were constantly telling her what a great job she was doing. On May 11, 2004, Aaron Conner wrote, "Thanks Betty – your great follow-up and attention to detail was an important part of the overall teamwork on the project.  I also very much appreciate the encouragement and constructive input you always provide!"

39.    For her 2004 mid-year and year-end Performance Evaluations, Jensen continued to exceed expectations in her job duties and attributes.  She was recognized for her persistence, timeliness, reliability, creativity, and innovative ideas.

40.    In 2005, Jensen's job duties expanded due to growth in her department. She was responsible for overseeing a part-time clerk, and she independently trained a new administrative associate in addition to her regular job duties.  Jensen was also in charge of ongoing coordination of the department move.

41.    In 2005, Jensen received 33 PRIDE Tribute acknowledgments and commendations from over 20 employees for her excellent work performance.  She was also nominated for two Blue Ribbons – one for expeditiously completing a task, and the other for recognizing ways to lower company costs.

42.    Jensen's 2005 year-end Performance Evaluation, once again, boasted an overall rating of "Far Exceeded Expectations."

43.    In 2006, Jensen received 23 PRIDE Tribute acknowledgments.  She was acknowledged for: exceeding expectations; being a team player; taking the lead on directing employees; participating in extra-curricular company activities; and her excellent communication skills.

44.     Jensen was individually recognized for having a hand in USAA's receipt of The Office Building of the Year ("TOBY") Award for the State of Arizona for 2006-2007, which, according to USAA's then Senior Vice President for Phoenix and Region Operations, "is the most prestigious and comprehensive program of its kind in the commercial real estate industry."

45.     Jensen was nominated for a Blue Ribbon for the fourth time in 2006.

46.     Because of her hard work and commitment to USAA, Jensen received a "spot bonus" from the company in 2006.  After she learned of the bonus, Jensen wrote a heartfelt letter to her supervisors thanking them for the recognition and expressing how much she loved working for them.  Jensen also received a salary increase that year.

47.     Jensen was told countless times that she was an "invaluable resource" to the company.  She developed friendships with many of her co-workers and supervisors.  She received multiple personal thank-you cards from employees, expressing their appreciation for Jensen's continued support and devotion, as both a friend and employee.

48.     Jensen far exceeded expectations for the third time in both her mid-year and year-end performance evaluations during 2006.  Her manager commented, "Betty is committed to excellence in every detail of her work!  Her hard work and level of engagement are greatly appreciated, and I look forward to again partnering with Betty in 2007 and achieving our mutual goal of taking this department to Best-in-Class."

49.     In 2007, Jensen continued to manage the coordination of the company move in addition to her regular job duties.  She maintained a positive attitude despite the fact that her department was under-staffed.  She handled this by continuing to look for ways to make her department run more smoothly and efficiently.  On June 25, 2007, Jensen submitted three ideas to her manager regarding ways to improve specific system functions, to which one was added to the company's list of "future system enhancements."

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

50.     Jensen received 14 PRIDE Tribute acknowledgments from 14 different people in 2007, one of which included an employee who stated:

> I want to recognize Betty for being such an OUTSTANDING source of support for an extremely large department.  She works harder than anybody I know at keeping things organized, up to date, and moving in the right direction.  If she sees something that needs doing, she does it!  The size of the issue doesn't matter to her – large or small, she tackles everything with a passion and engagement that is infectious to those around her.  I wish I was as on top of things as Betty – we could all stand to take a page or two out of her book!

51.     Jensen was promoted to Administrative Support Associate I in 2007, and she received high ratings in all categories of her mid-year and year-end reviews.

52.     In 2008, Jensen received approximately 20 PRIDE Tribute acknowledgments from managers, directors, representatives, and other employees.

53.     Throughout 2008, Jensen independently developed new methods to help USAA operations run more effectively.  She was acknowledged for creating numerous reports, spreadsheets and presentations to meet the needs of her department.  Jensen was constantly recognized for going the extra mile to help so many people. She performed all of her job duties with the utmost quality, even when she did not think anyone was looking.  For instance, she was observed performing pre-inspection for the company's safety inspection audit.  After Jensen reported to her team that they passed the inspection, an employee responded, "We were okay because, once again, you took care of us.  I saw you walking around doing the Pre-inspection, and getting things in order that needed to be in order.  If we rock, it is only because of you.  You are the best!" Jensen's superior level of performance led to her second salary increase in 2008.

54.     In 2009, Jensen continued to receive multiple acknowledgments.  She was nominated for the Phoenix Excellence Award for a second time and received a third salary increase. Jensen received recognition from USAA's then president, Stuart Parker, in a letter dated November 16, 2009 stating, "Thank you for the time and commitment

you gave the Office Consolidation effort. … I appreciate your hard work, energy and leadership."

55.     In 2009, Jensen received 11 PRIDE Tribute acknowledgments from various employees for her hand in coordinating "Night at the U-Rocksbury"- an annual employee recognition event; her continued efforts to communicate and keep everyone on the same page; taking time out of her day to assist an employee's family with notarizing documents; her many contributions to the company; and her excellent team-player abilities.  She accomplished approximately 30 task assignments, including: managing a move of over 500 employees in 30 days; training and transferring Move Coordinator responsibilities; and creating multiple company strategies and processes, job aids and new job functions.

56.     Jensen's accomplishments were reflected in her 2009 year-end evaluation, and she again exceeded expectations for the sixth time.

57.     In 2010, Jensen received a Certificate of Achievement award for successfully completing a training program for her job.  She was recognized for a job well done in coordinating several company events.  Jensen was given a Certificate of Appreciation from a specific unit in the company for her "outstanding performance and lasting contribution."  Jensen's motivation to make her supervisors' jobs easier always gave way to continued efforts in looking for improvements in company procedures.  Her ideas were well received by her supervisors and were brought up in future meetings. Jensen was recognized for graciously filling in for an employee who went on an extended leave of absence.  The employee commended Jensen by stating, "Betty did a fantastic job handling all administrative job functions" and was "extremely flexible and willing to adjust" to the position.  She was also "effective and efficient," and "shared new ideas and/or changes that ha[d] a positive impact" on the department.  Her supervisor stated:

> [Jensen] regularly exhibited USAA's My Commitment to Service
> principles, as evidenced, in particular, by her service to others (almost all of

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

her PRIDE Tributes from last year mentioned her Service or Teamwork). She handled additional workloads several times in 2010 when her peers were out of the office during extended absences, and provided notary services on over 100 occasions last year.  She supported the Mission by supporting the Region's leadership team and its employees, and she was, and still is, an important part of what we do here in Phoenix.

58.     In 2011, Jensen continued to strive for excellence in every task she was assigned.  Her peers went out of their way to reward her with a gift card for her assistance on a project.  As always, Jensen was very thankful each time she was recognized.  An employee stated in an October 6, 2011 email, "[I]f only our budgets allowed us to recognize you more often, you would be the wealthiest person at USAA with all that you do!!!!"  Jensen received three certificates for completing essential training programs.

59.     In her 2011 year-end performance evaluation, Jensen was acknowledged for her continued "ability to be proactive" and going out of her way to make everyone's jobs so much easier.  She continued as a move coordinator and "did an exceptional job through every phase of the process."  Jensen was recognized for maintaining an "extremely organized" work environment.

60.     Jensen played a key role in the success of a handful of company events. The company's success relied heavily on Jensen.  Her many accomplishments earned her a fourth salary increase in 2011.

61.     In 2012, Jensen received 45 PRIDE Tribute acknowledgments from numerous employees.

62.     In 2012, Jensen was the recipient of the First Quarter Ambassador Award.

63.     The First Quarter Ambassador Award is one of the most prestigious awards that a USAA employee can receive.  Jensen was awarded for her performance in a large project consisting of coordinating at-home workstations for managers.  She had "proven to be an indispensible asset to everyone," and "performed with a high degree of quality in supporting her leadership team during times of unprecedented volumes." Everyone was "touched by [Jensen's] positive personality, dedication to service and

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

extreme organization every day." She made her department "a stronger team due to her presence and commitment."

64.     Jensen received an enormous amount of acknowledgments through the USAA Pride Tribute recognition program for every single year. She was consistently recognized for exceeding customer expectations, and for her teamwork, commitment, participation and contributions to the company. Jensen consistently exceeded USAA's expectations as reflected in each and every annual performance evaluation.

65.     Jensen became ill on January 3, 2013 and subsequently went off work.

66.     She tried to return to work on a part-time basis on three separate occasions, but she was ultimately unable to sustain even part-time work. She went off of work permanently due to her worsening symptoms and doctor's recommendation.

67.     Jensen submitted medical records and complied with all of Liberty's requests for the consideration of her STD and LTD claims.

68.     The STD and LTD appeals processes are different, at least in part because of the difference in funding. The STD benefits are self-insured by USAA. For STD benefits that are denied, a participant first appeals the denial to Liberty. If Liberty upholds the denial, then the participant must submit a second appeal to USAA directly. USAA's decision on the second appeal is considered the final decision, entitling a participant to seek further relief only in federal court. For LTD benefits that are denied, a participant must appeal to Liberty and has no further appeals following Liberty's final denial of that appeal. Liberty's timeline for making a determination depends on whether the LTD denial is the denial of an initial claim for benefits or a termination of ongoing LTD benefits.

69.     Jensen struggled to figure out what was wrong with her, initially believing it to be Valley Fever and infection.

70.     Liberty awarded STD benefits initially until May 22, 2013.

71.     Jensen continued to worsen while on claim for STD benefits.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rd., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

72.    As of the denial of her STD and LTD benefits, Jensen's health issues remained unresolved and worsening. Her physician, Dr. Blair, recommended that Jensen remain off work pending further testing and treatment.

73.    Since the denial of her STD and LTD benefits, Jensen has been diagnosed with Fibromyalgia.

74.    Jensen is informed and believes that Liberty suspected Jensen would be ultimately diagnosed with Fibromyalgia and, as a result, intentionally denied the STD and LTD claims before a proper diagnosis could be identified.

75.    Liberty ignored Jensen's treating providers' recommendations and the medical evidence to justify its decision to uphold a denial of LTD benefits. It knew that there were unresolved questions and that Jensen had ongoing symptoms at the time of its LTD benefits denial.

76.

77.    Liberty denied both ongoing STD benefits and the LTD claim in one letter dated July 3, 2013. The same DCM, Erika Cruz, authored the Initial Denials of Jensen' ongoing STD benefits and LTD claim. The July 3, 2013 letter denied benefits as of May 22, 2013.

78.    In a letter dated August 24, 2013, Jensen timely appealed both her STD and LTD denials in one letter.

79.    On September 23, 2013, Liberty acknowledged that Jensen was appealing both her STD and LTD benefits denials.

80.    Liberty knew that, if Jensen's disability benefits were denied, she would lose health benefits and be unable to continue treatment.

81.    In a letter dated October 30, 2013, Liberty issued its denial for STD benefits.

-12-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

82.     In a separate letter dated October 30, 2013, Liberty issued the LTD final denial, citing Jensen's failure to complete the elimination period as one of the reasons for denial.

83.     Jensen and Plan participants are not required to exhaust STD benefits in order to receive LTD benefits.

84.     Liberty's employee Michelle Cole denied both STD and LTD claims on final denial, even though the STD and LTD letters were separated out (still the exact same language). Also, the first letter was exactly the same.

85.     Jensen tried to appeal the STD benefits denial to USAA, who refused to accept the appeal after misleading Jensen otherwise.

86.     Jensen exhausted her administrative remedies under the Plan for LTD benefits before timely bringing this lawsuit.

### COUNT I
### (Recovery of Plan Benefits)
### (The Plan, USAA, and Plan Administrator)

87.     All previous paragraphs are incorporated by reference.

88.     The Plan is an Employee Welfare Benefit Plan as defined by ERISA. Defendants are the Plan, Plan administrators or Plan fiduciaries of the Plan under ERISA.

89.     The Plan represents LTD coverage and a promise to provide LTD benefits until Jensen is no longer disabled under the terms of the LTD Program.

90.     Under the LTD Program, Jensen is disabled when, because of an injury or sickness, "(1) [she] cannot perform each of the material and substantial duties of [her] occupation; and (2) after benefits have been paid for 24 months, [she] cannot perform each of the material and substantial duties of any gainful occupation for which [she] is reasonably fitted by training, education, experience, age, or physical and mental capacity; or (3) is Partially Disabled." "'Partial Disability' or 'Partially Disabled' means, as a result of the Injury or Sickness, the Participant is: (1) able to perform one or more,

but not all, of the material and substantial duties of her own or any other occupation on an Active Employment or part-time basis; or (2) able to perform all of the material and substantial duties of her own or any other occupation on a part-time basis."

91.    Jensen is unable to definitively ascertain the appropriate definition of disability, because the Plan documents have conflicting information or are missing language.

92.    Jensen became disabled in 2013 and continues to be disabled under the Plan, the LTD Program, and the Policy. She is unable to perform the material and substantial duties of her own occupation or any other gainful occupation.  She has claimed the benefits under the Plan to which she is entitled.

93.    Jensen's medical conditions never improved and, in fact, have worsened since leaving work in 2013.

94.    Given Jensen' pain, severe fatigue, and resulting cognitive dysfunction, she cannot perform the material and substantial duties of her occupation or any gainful occupation, regardless of its sedentary nature.

95.    Jensen had to forego medical treatment as a result of the termination of her STD benefits and denial of her LTD benefits.

96.    Jensen reasonably expected that her conditions met the requirements of Disability as defined by the Plan for LTD benefits, and that she would receive benefits and COLA increases under the Plan until age 65 or until she was no longer disabled. Monthly benefits payable under the Plan are adjusted and prorated for COLA increases equivalent to those received by retirees under the Retirement Plan and are not subject to monthly maximum amounts under the LTD Plan.

97.    Liberty's determination that Jensen was not entitled to benefits was influenced by an improper conflict of interest.

98.    Liberty improperly inserted terms into the Plan that substantially altered the definition of disability under which Jensen is entitled to benefits.

-14-

99. Liberty improperly demanded "objective medical evidence" and failed to consider other factors including, for example, the opinions of treating and examining physicians, Jensen' credibility, whether reported activity is consistent with the symptoms and limitations, whether Jensen has responded to and cooperated in her treatment, and whether the symptoms reported are anatomically implausible.

100. Liberty improperly failed to consider Jensen' subjective complaints, as well as the effect of her medications, in determining whether she is totally disabled under the Plan.

101. Liberty denied Jensen a full and fair review, in part by failing to initiate and complete a timely review of her LTD claim and by failing to provide Jensen with all of the evidence it relied on in denying LTD benefits.

102. Liberty used the wrong job description, considering Jensen an administrative assistant or customer service representative.

103. The Plan is required, as part of the appeal process, to establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination under a full and fair review. 29 C.F.R. § 2560.503-1(h)(1).

104. Jensen was not given any meaningful instruction on how to perfect her claim, nor was she told what additional information would help Liberty in its decision-making. Liberty wrongfully denied Jensen' disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

105. Whenever Jensen requested her claim file, Liberty failed to provide her with relevant documents as required under ERISA. In doing so, Liberty cited to outdated ERISA requirements and withheld relevant documents.

-15-

106. Liberty acted arbitrarily and capriciously when it selectively reviewed Jensen' medical records, relying only on those portions of her medical records that supported a denial of benefits.

107. Liberty's procedural irregularities include but are not limited to: all correspondence between Liberty and the independent medical examiners, peer reviewers, and medical reviewers/consultants; improperly delegating duties to third parties; relying on an improper definition of disability; failing to correctly interpret Jensen' job duties; behaving as an adversary bent on denying the claim; impermissibly "cherry picking" only evidence favorable to Liberty from Jensen' claim file; failing to describe the materials that Jensen would need to provide to Liberty in order to substantiate her disability; implementing unfair and inconsistent claims procedures; and failing to act in Jensen' best interests.

108. Defendants failed to investigate Jensen' claim adequately, including its failure to conduct an in-person medical evaluation, which would have been beneficial to a full and fair review of Jensen' claim.

109. Upon information and belief, the peer reviewers were financially incentivized to deny Jensen's claim and acted with bias.

110. Liberty unreasonably selected and used reviewing physicians who were without appropriate knowledge, training, and experience to assess Jensen' disabling conditions.

111. Liberty unreasonably failed to ensure that peer reviewers and its NCMs provided unbiased assessments for purposes of its claims administration.

112. Liberty and its employees who handled Jensen' STD and LTD claims have a history of bias against claimants and are financially incentivized to deny claims under the Plan at the transition from STD to LTD benefits.

-16-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

113.   Liberty failed to maintain accurate and reliable internal log notes. Jensen is informed and believes that the claim file is missing important information and has been altered by Liberty prior to its disclosure to Jensen.

114.   The peer reviewers and NCMs arbitrarily reached their opinions based on insufficient evidence or investigation.

115.   Liberty's physician reviewers and/or NCMs did not reasonably communicate with Jensen's treating physicians. And when they did attempt to contact treating physicians, they never let Jensen know that. Instead, Liberty denied Jensen's claim without adequate information.

116.   None of Liberty's reviewing physicians and/or NCMs ever set forth any substantive reasons why Jensen's doctors' opinions that she could not work were incorrect. In fact, they seemed to completely ignore Dr. Blair's July office visit notes, in which Jensen was recommended to remain off of work.

117.   Liberty failed to explain why it credited the physician reviewers over Jensen's treating physicians. It failed to credit Dr. Blair's findings without justification.

118.   The peer reviewers were not given the Plan or other important records for reaching its decision that Jensen could perform sedentary work.

119.   The peer reviewers never spoke to Jensen, and they never conducted an in-person evaluation of her.

120.   Liberty intentionally and in bad faith withheld relevant information in violation of ERISA, such as internal guidelines and other information Jensen requested on appeal. It failed to apprise her of her appeal rights.

121.   Liberty handled Jensen's claim in an adversarial manner and failed to administer the Plan prudently.

122.   Despite the coverage of Jensen's disability, Defendants have improperly denied LTD benefits to Jensen in breach of the Plan.  This breach was arbitrary,

capricious, an abuse of discretion, not supported by substantial evidence and was clearly erroneous.

123.   Jensen has exhausted her administrative remedies.

124.   Defendants are not entitled to an arbitrary and capricious standard of review of their decision in this action, so Jensen' claims are entitled to *de novo* review with a bench trial on the record. Liberty's numerous procedural errors rise to the level of a "wholesale and flagrant" violation of ERISA, entitling Jensen to *de novo* review.

125.   Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Jensen is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

126.   Jensen is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce her rights under the Plan.

127.   Jensen is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

128.   Jensen' claims are subject to *de novo* review.

129.   Upon information and belief, Jensen may be entitled to additional benefits from USAA as a disabled employee including, but not limited to, health insurance, life insurance, supplemental LTD benefits, and retirement/pension credits.

130.   Pursuant to 29 U.S.C. § 1132(g), Jensen is entitled to recover her attorneys' fees and costs incurred herein from Defendants.

131.   Jensen is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**COUNT II**
**(Breaches of Fiduciary Duty)**
**(USAA and the Plan Administrator)**

132.   All previous paragraphs are incorporated by reference.

133.   On information and belief, USAA considers the Plan to be the governing plan document of all Constituent Benefits Programs.

134.   The Plan Administrator and USAA are named fiduciaries of the Plan.

135.   The STD and LTD Programs are governed by the terms of the Plan above any other document.

136.   USAA paid insurance premiums for the Policy from its general assets and from participant contributions.

137.   The Plan Administrator has discretion to construe and interpret the Plan and the Constituent Benefits Programs.

138.   The Plan defines a TPA as an "entity operating under a TPA Agreement to provide administrative services with respect to any benefits offered under one or more of the Constituent Benefit Programs."

139.   "Except as may otherwise be specifically provided in the applicable Constituent Benefit Program Document, in the case of any Insured Constituent Benefit Program, the applicable Insurer is hereby delegated the powers and duties of the Plan Administrator with respect to the final determination of eligibility for benefits and the amount of such benefits, including, without limitation, the discretion to interpret the Plan provisions with respect to such Insured Constituent Benefit Program. Upon designation and written acceptance of such delegation, employment, or authorization, the Plan Administrator will have no liability for the acts or omissions of any such delegate as long as the Plan Administrator does not violate its fiduciary responsibility in making or continuing such delegation. All delegations of fiduciary responsibility will be reviewed periodically by the Plan Administrator and will be terminable upon such notice as the

-19-

Plan Administrator in its discretion deems reasonable and prudent under the circumstances."

140.   Under the Plan, each fiduciary must discharge her duties solely in the interest of Participants and for the exclusive purpose of providing benefits to Participants and in accordance with the Plan.

141.   The Plan Administrator and USAA knew or should have known that Liberty handled claims against the best interests of its employees and not pursuant to the Plan.

142.   On information and belief, the Plan Administrator did not properly designate and Liberty did not accept in writing the delegation of Plan Administrator responsibilities.

143.   It is unclear what administrative responsibilities have been delegated by the Plan Administrator to Liberty, as the Plan Administrator has failed to produce in response to written requests any TPA Agreements or other documents demonstrating a delegation of authority to Liberty.

144.   The Plan Administrator should clarify what administrative responsibilities, if any, it has delegated to other entities such as Liberty.

145.   On information and belief, the Plan Administrator did not periodically review Liberty's actions as a delegated fiduciary under the Plan.

146.   On information and belief, the Plan Administrator's failure to periodically review Liberty's actions as a delegated fiduciary under the Plan was unreasonable and constituted a breach of fiduciary duty.

147.   On information and belief, if the Plan Administrator did periodically review Liberty's actions as a delegated fiduciary under the Plan, then its periodic review was unreasonable and constituted a breach of fiduciary duty.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

148.   On information and belief, USAA and the Plan Administrator established "service level objectives" for Liberty, which did not reasonably monitor Liberty's actions or protect Plan participants.

149.   On information and belief, the Plan Administrator acted unreasonably and imprudently by not terminating Liberty's delegation of fiduciary authority.

150.   The Plan Administrator and USAA breached its fiduciary duties to Jensen, the Plan, and other Plan participants.

151.   On information and belief, the Plan Administrator is liable for Liberty's actions, because the Plan Administrator violated its fiduciary obligations by continuing Liberty's delegation as Plan Administrator and/or by failing to protect Plan participants from Liberty's conflicted and adversarial claims handling.

152.   On information and belief, USAA knows or should know that Liberty improperly handles STD claims in an effort to avoid financial liability on LTD claims.

153.   USAA should have accepted Jensen's STD appeal, because the manner in which her denials were communicated was misleading and confusing. It would not have been prejudiced by accepting the STD appeal.

154.   On information and belief, in exchange for the opportunity to serve in the dual capacity of TPA and insurer, Liberty and USAA have negotiated lower premiums.

155.   Defendants consciously, unreasonably, intentionally and without justification breached their fiduciary duties to Jensen with respect to their administration of the Plan by violating ERISA regulations and the Plan in its failure to provide a full and fair review.

156.   Defendants and Liberty failed to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Therefore, Defendants' breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a) and all other

ERISA regulations. USAA and the Plan Administrator acted imprudently by failing to oversee Liberty's claims administration.

157.    Jensen was harmed by Defendants' breaches of their fiduciary duties.

158.    Jensen is entitled to equitable relief for Defendants' breach of their fiduciary duties, including for the breaches of fiduciary duties committed by any agents or third parties for Defendants.

159.    Liberty was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld benefits for its own profit.

160.    Because Liberty breached its fiduciary duties, Jensen was actually harmed.

161.    Jensen relied on the Plan to her detriment, believing that she was entitled to LTD benefits pursuant to the provisions of the Plan. She further relied on Liberty's representations that, if she participated in additional appeals, Liberty would act in good faith and in her best interests.

162.    Liberty and Defendants must return any benefits resulting from its breach to Jensen.

163.    As a direct and proximate result of the breaches of fiduciary duty, Jensen suffered actual financial harm and incurred financial expense.

164.    Jensen is entitled to injunctive and/or mandamus relief under 29 U.S.C. § 1132(a)(2)-(3). She is entitled to enjoin any act or practice by Defendants that violate ERISA or the Plan, and/or she is entitled to see other appropriate equitable relief that is traditionally available in equity. Because of Liberty's breach of fiduciary duties to Plan participants, and because of the Plan Administrator's failure to appropriately monitor Liberty and protect Plan participants and beneficiaries from Liberty's breaching conduct, the Plan Administrator and USAA should be enjoined from employing Liberty as both its TPA for STD claims and insurer on LTD claims. The Plan Administrator should further be required to implement appropriate procedures in oversight of Liberty and/or

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

any other insurers under of STD and LTD benefits under the Plan, which will maintain accountability for the administrative responsibilities it delegates under the Plan.

165.    Jensen should be awarded equitable and/or declaratory relief for USAA's breach of fiduciary duty, which would require USAA to accept and award STD benefits.

## COUNT III
### (Breaches of Fiduciary Duty)
### (Liberty)

166.    All previous paragraphs are incorporated by reference.

167.    Jensen' STD benefits were self-insured by USAA, whereas her LTD benefits were fully insured by Liberty.

168.    In 2009, USAA paid Liberty $5,692,417 in premiums for LTD coverage and approximately 20,447 persons were covered as of the end of the policy year, December 31, 2009.

169.    In 2010, USAA paid Liberty $6,094,162 in premiums for LTD coverage and approximately 21,319 persons were covered as of the end of the policy year, December 31, 2010.

170.    In 2011, USAA paid Liberty $6,715,877 in premiums for LTD coverage and approximately 22,733 persons were covered as of the end of the policy year, December 31, 2011.

171.    In 2012, USAA paid Liberty $6,161,144 in premiums for LTD coverage and approximately 24,536 persons were covered as of the end of the policy year, December 31, 2012.

172.    In insurance, the 'loss ratio' is the ratio of total losses incurred (both paid and reserved) in claims plus adjustment expenses divided by the total premiums earned. The 'target loss ratio' refers to the loss ration necessary to fulfill the insurer's profitability goal. 'Reserves' are estimates of the money that Liberty has to pay over the duration of a claim. Liberty must set aside proper reserves on fully insured claims.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

173.   In 2012, the Plan paid Liberty less in premiums than it had in 2011, but the covered persons under the Plan increased in 2012. The anticipated and received premiums impact Liberty's estimation of its financial liability under a Plan.

174.   On information and belief, USAA negotiated lower premiums with Liberty, which affected Liberty's "target loss ratio," thereby incentivizing Liberty to deny more LTD claims under the Plan than it had previously.

175.   To the extent that the Plan Administrator did delegate Liberty with fiduciary obligations as Plan Administrator, then Liberty is a fiduciary of the Plan. Alternatively, Liberty is a named fiduciary of the Plan.

176.   Jensen is informed and believes that, in order to account for income and future liability for fully insured claims, Liberty has an Actuarial Department that establishes "reserves" for fully insured claims.

177.   Upon information and belief, Liberty defines 'reserves' as an estimate of the liability that it will need to pay out over the course of a claim's duration, which is calculated based on the date that benefits first become due until a claim closes.

178.   Upon information and belief, Liberty's net income in any given period, including on a monthly basis, is directly influenced by changes to its reserves.

179.   Jensen is informed and believes that the number and status of claims directly influences Liberty's reserves.

180.   On information and belief, Liberty did not set aside proper reserves for paying claims under the Plan and did not use appropriate actuarial standards and/or reliable risk factors for calculating reserves on claims under the Plan.

181.   Upon information and belief, Liberty never approved Jensen' LTD claim, so it never set aside loss reserves for the claim. By doing this, Liberty was able to avoid reporting reserves that would have negatively impacted the company's net income reports.  Alternatively, Liberty calculated and set aside reserves on Jensen' claim based on unreliable information.

-24-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

182.   Liberty is informed and believes that Liberty employees such as Mr. Johnson and DCM Cruz are educated on reserves and the impact of their claims decisions on Liberty's profitability. Liberty maintains and provides to its employees information in the form of reserve reports and net income reports.

183.   Liberty breached its fiduciary duties to Jensen by mishandling her LTD claim, failing to render timely decisions, and knowingly misrepresenting Jensen' Second STD Appeal to be her First LTD Appeal. It further breached its fiduciary duties by offering Jensen additional appeal opportunities, which it did so only in an effort to conceal and/or perfect its own administrative shortcomings on the claim.

184.   In its dual capacity as TPA and insurer, Liberty breached its fiduciary duties by coordinating its STD and LTD claims administration under the Plan in an effort to avoid liability on LTD claims.

185.   To the extent that Liberty acted as a fiduciary to determine benefits eligibility under the Plan, Liberty breached its fiduciary obligations to Jensen.

186.   All of Liberty's procedural irregularities further constitute breaches of its fiduciary duty to Jensen.

187.   Jensen requested disclosure pursuant to ERISA. To the extent Liberty acted as a fiduciary and/or was the designated Plan Administrator, it refused to provide documents that Jensen was entitled to under ERISA. Liberty's failure to provide all relevant documents to Jensen constituted a breach of its fiduciary duties in violation of ERISA. Liberty's failure to provide and reasonably apprise Jensen of her rights on appeal was improper and compromised Jensen' right to a full and fair review.

188.   Defendants consciously, unreasonably, intentionally and without justification breached their fiduciary duties to Jensen with respect to their administration of the Plan by violating ERISA regulations and the Plan in its failure to provide a full and fair review.

189.   Defendants and Liberty failed to discharge its duties with the care, skill,

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Therefore, Liberty breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a) and all other ERISA regulations.

190.    Jensen is entitled to equitable relief that cannot be obtained through her benefits claim under 29 U.S.C. § 1132(a)(1)(B).

191.    Jensen is entitled to enjoin any act or practice by Liberty that violates ERISA or the Plan, and/or she is entitled to see other appropriate equitable relief that is traditionally available in equity. As such, Jensen seeks this Court to enjoin Liberty from applying inconsistent appeals procedures in violation of the Plan and ERISA and from using the same employees to simultaneously handle STD and LTD claims, as well as multiple appeals. It should further be enjoined from incentivizing employees to handle claims in an effort to avoid financial liability, and Liberty should be required to implement guidelines that protect Plan participants from Liberty's structural conflict of interest. Further discovery into Liberty's conflict and its impact on claims handling is needed for Jensen to articulate exactly what injunctions are most appropriate.

192.    ERISA "does not elsewhere adequately remedy" the injuries caused to Jensen by Liberty's breach of fiduciary duty violations.

193.    Pursuant to 29 U.S.C. § 1132(g), Jensen is entitled to recover her attorneys' fees and costs incurred herein from USAA and the Plan for bringing claims under 29 U.S.C. § 1132(a)(2)-(3).

194.    Upon information and belief, separate equitable relief may be appropriate under 29 U.S.C. § 1132(a)(3) beyond injunctive relief, because 29 U.S.C. § 1132(a)(1)(b) is inadequate for recovery.

195.    Jensen is entitled to equitable relief for Defendants' breach of their fiduciary duties, including for the breaches of fiduciary duties committed by any agents or third parties for Defendants.

196.   Liberty was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld benefits for its own profit.

197.   Because Liberty breached its fiduciary duties, Jensen was actually harmed.

198.   Jensen relied on the Plan to her detriment, believing that she was entitled to LTD benefits pursuant to the provisions of the Plan. She further relied on Liberty's representations that, if she participated in additional appeals, Liberty would act in good faith and in her best interests.

199.   Liberty and Defendants must return any benefits resulting from its breach to Jensen.

200.   As a direct and proximate result of the breaches of fiduciary duty, Jensen suffered actual financial harm and incurred financial expense.

201.   WHEREFORE, Jensen prays for entry of judgment against Defendants as follows:

A.   For all past and future LTD benefits under the terms of the Plan;

B.   Clarifying and determining Jensen's rights to future benefits under the terms of the Plan;

C.   For injunctive relief against Defendants; requiring compliance with ERISA regulations and Plan terms, including but not limited to: 1) enjoining USAA and the Plan Administrator from employing Liberty as both its TPA for STD claims and insurer on LTD claims; 2) requiring USAA to allow Jensen to submit an STD appeal; 3) requiring the Plan Administrator to implement appropriate procedures in her oversight of Liberty and/or any other insurers of the company's STD and LTD benefits under the Plan; 4) enjoining Liberty from applying inconsistent appeals procedures in violation of the Plan and ERISA; 5) enjoining Liberty companywide from reliance on and citation to outdated ERISA regulations, such as its disclosure of "pertinent information" to Jensen; 6) enjoining Liberty from using the same employees to simultaneously handle STD and LTD claims and

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

appeals under the Plan; 7) enjoining Liberty from any conduct or compensation structures that incentivize its employees and/or contractors to handle claims with the goal of avoiding financial liability; 8) requiring Liberty to implement guidelines or procedures that protect Plan participants from Liberty's structural conflict of interest; and 9) for other injunctive relief to be determined following further discovery into Liberty's conflict of interest, Defendants' relationships with one another, and the Plan Administrator's delegation of its administrative responsibilities.

D.     For all other equitable relief that is proper as a result of Defendants' breach of fiduciary duties, including but not limited to equitable surcharge, disgorgement, and/or other appropriate equitable remedy(ies) for Defendants' breaches of fiduciary duty violations under ERISA;.

E.     For an award of Jensen's attorneys' fees and costs incurred herein;

F.     For an award of prejudgment interest on benefits and other equitable relief at the highest legal rate until paid; and

G.     For such and further relief as the Court deems just and reasonable.

Dated this 23rd day of December, 2014.

CALDWELL & OBER, P.L.L.C.

By: s/ Erin Ronstadt
    Erin Ronstadt
    Jeremy Pekas
    Kristin Cox
    Attorneys for Plaintiff

-28-